RENNOLDS v. AIRPORT ADVERTISING Inc.

Civ. A. No. 1082.

District Court, D. Delaware.

July 22, 1948.

David B. Coxe, Jr., of Wilmington, Del., for plaintiff.

F. William Carr (of Killoran & Van Brunt), of Wilmington, Del., for defendant.

LEAHY, District Judge.

This is an action for injunctive relief and a general accounting for an alleged breach of an employment contract. The case is largely factual and, since the points raised are numerous, it will be necessary to detail the facts minutely.

On December 6, 1945, Francis C. Rennolds and Elmo T. Legg, partners trading as Airport Advertising Company, hereinafter referred to as "representatives", executed a contract with defendant corporation to sell advertising displays in the Washington National Airport and elsewhere. The contract contains certain negative covenants operative against both parties. For example, defendant covenanted that the representatives should be the sole and exclusive agents of defendant for the sale of national advertising and that defendant would never sell to anyone at less than rates submitted to the representatives. The representatives, on their part, covenanted they would not enter into the airport field as publishers or concessionaires or seek any privileges similar to those

which defendant holds under its contract with the Washington National Airport for the duration of the contract, but would act exclusively as representatives of defendant. The type of advertising contemplated by this contract was in a new and undeveloped field; never before had displays, such as those contemplated by the contract, been placed by national advertisers in airports.

There is a further condition in the contract to the effect that the representatives were to obtain a minimum average of one $500.00 display facility per month until such facilities then available in the National Airport in Washington, D. C., had been disposed of. All the incidents of the case are dependent upon whether this condition was met. The contract provided that if it was met, then the contract was to become automatically effective for three years with an option with the representatives to renew it up to ninety-nine years. On March 14, 1946, the contract was modified in writing to make it binding on the heirs, successors and assigns of the parties.

It is conceded that five of the six spaces were obtained according to the terms of the contract but dispute exists as to whether the sixth space was obtained within the terms of the contract. Plaintiff contends that on June 5, 1946, he executed a contract for the sale of space No. 1 (i. e., the sixth space) in Washington National Airport to Cities Service Company. On June 12, 1946, defendant claimed that the contract of December 6, 1945, had expired because six locations had not been sold. On June 13, 1946, plaintiff forwarded to defendant the contract for the No. 1 location. On June 17, 1946, a meeting was held by the parties but the subject of what transpired at this meeting is in conflict. Defendant contends plaintiff agreed that the contract of December 6, 1945, as amended, was no longer in existence. Plaintiff contends there was no such agreement and that the purpose of the meeting was merely to talk over the relations between the parties with a view to executing a new contract which would be more agreeable to all the parties. Later, on June 27, 1946, defendant advised plaintiff that the contract of June 5, 1946, with respect to the Washington National Airport, was perfectly acceptable to the corporation; and later plaintiff sold space in Detroit Airport to Cities Service Company.

The letterheads of defendant indicated that plaintiff's office in New York City was the New York office of defendant. The original contract executed contemplated that the representatives would act in a self-sustaining capacity. In other words, they were to receive no compensation except commissions and any expenses prerequisite to securing sales were their own. At trial, plaintiff admitted that his sales record was not good but in explanation of that fact claimed that most airfields were so dilapidated and poor that nobody could have sold space in them. For example, in answer to the question if he made an effort to sell space in some of these other airports, he stated: "I did, but even the best advertisers just could not see their way clear to buy them. They would like to have done me the favor and so stated, but they could not go that far." In answer to an inquiry from the Court, plaintiff stated he believed he could spend as little or as much time as he saw fit in carrying out the terms of the agreement; in short, the matter of making sales was solely within his discretion.

On August 22, 1947, plaintiff executed a contract for the sale of space in the Washington National Airport with Buchanan & Co., the advertising agency for the Clark Gum account. Defendant contends plaintiff did not sell the space but claims that a Mr. Graham of Pittsburgh sold it; defendant accordingly refuses to pay plaintiff commissions in connection with this space.

The complaint charges and it is admitted that during 1947 defendant placed its own salesmen in the field for the purpose of selling advertising space and also it is admitted that defendant notified a number of national advertisers that plaintiff was no longer its representative. It is contended that defendant wrongfully reduced the contractor rate on the Benrus Watch Company contract and failed to maintain certain displays in the Washington National Airport. On October 20, 1947, defendant insisted plaintiff discontinue the use of the

name Airport Advertising Company and that it remove that telephone listing in the New York City directory.

Plaintiff prays for injunctive relief. It is urged that this relief is justified because by virtue of the peculiar nature of the contract, the remedy at law is inadequate. Specifically, plaintiff prays that defendant treat the contract of December 6, 1945, as still in force and that defendant be enjoined from violating it. Plaintiff also prays for a general accounting on all advertising display accounts of defendant to date, to the commissions of 15% on the Clark Gum contract and an accounting for losses incurred by reason of defendant's reduction of rates specified in the Benrus and Seagram's accounts and that defendant's counterclaim should be dismissed.

Defendant claims that the contract of December 6, 1945, was terminated by failure of plaintiff to perform and, in any event, the contract was terminated by mutual agreement or the failure of plaintiff to make substantial sales from June, 1946, to October, 1947. Further, defendant claims that plaintiff is not entitled to injunctive relief because of his own doubts as to future sales. Defendant also claims that plaintiff is not entitled to any of the other prayers of the complaint. Finally, defendant asks that plaintiff be enjoined from interfering with defendant's customers and from using the name of Airport Advertising Company in doing business.

Before discussing the legal phase, I shall resolve the inferences to be drawn from the facts. I think plaintiff has resolved the correct inferences from the facts and that the facts do not support defendant's inferences. For example, I think it clear that the contract of December 6, 1945, was not terminated by mutual consent. The operative facts such as defendant's letter stating that the sixth contract was perfectly acceptable to it, plus subsequent negotiations between the parties and the consequent failure to arrive at a new agreement, all reenforce plaintiff's testimony that the agreement of December 6, 1945, was still in effect according to the parties' own understanding. I find also plaintiff is entitled to commissions in connection with the execution of the Clark Gum contract and that the contract was in existence and plaintiff is entitled to losses incurred by reason of defendant's reduction of rates specified in the Benrus and Seagram's accounts.

■ The contract of December 6, 1945, was not terminated by mutual consent. I think further that it is unimportant to determine whether the sixth space was actually sold within the terms of the contract. The contract covering this item was accepted by defendant and the time element is so inconsequential that there was at least substantial compliance with the terms of the agreement.

■ Plaintiff is entitled to relief; but I do not think he is entitled to injunctive relief. I agree that equity should afford relief where the remedy at law is inadequate, even though there is no precise precedent, for it has been the genius of equity that it has developed to meet any changing conditions. My difficulty with granting such relief is not based on lack of precedent but rather upon plaintiff's admitted inability to sell space in the type of airfields which the defendant has been able to secure. It would be useless to decree specific performance of an agreement which plaintiff admits he will probably be unable successfully to execute on his own part. Injunctive relief should be denied for another reason. Recently plaintiff has been very unsuccessful in selling space and, irrespective of the cause, I think such deficiency constitutes and demonstrates failure of consideration on the part of plaintiff.

■■ For the same reasons, a general accounting and the other incidental claims of equitable relief will be denied. Plaintiff has also requested information relative to what space, if any, defendant has sold in addition to such agreements known to plaintiff. Plaintiff had ample time and means before trial (Best Foods, Inc. v. General Mills, Inc., et al., D.C.Del., 3 F. R.D. 275) and at trial, in fact, to elicit this information from the defendant. It can not secure it now as an incident to a sought accounting.

I am not satisfied as to what the record shows as to the precise amount of plaintiff's damages. I wish the parties would further argue the question as to the measure and amount of such damages.

 With respect to defendant's counterclaim for injunctive relief, as the contract is at an end, plaintiff should not any longer hold himself out as the sole representative of defendant. I can not enjoin plaintiff at this point from using the name of, or doing business under the name of, Airport Advertising Company, because I cannot find in the record whether defendant was organized before plaintiff entered the field and did business under such name. If defendant was first to make use of the words "Airport Advertising", then clearly plaintiff should be enjoined in accordance with defendant's prayer.